IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AQUAPAW BRANDS LLC,<br><br>           Plaintiff,<br>v.<br><br>FLOPET, et al.,<br><br>           Defendants. | 2:21-cv-00988-CCW |

## MEMORANDUM OPINION

Before the Court is Plaintiff Aquapaw Brand LLC's ("Aquapaw") Motion for Default Judgment. ECF No. 49. For the reasons that follow, Aquapaw's Motion will be GRANTED.

### I.  Procedural History

Aquapaw filed its Complaint on July 27, 2021. ECF No. 2. The Complaint alleges that Defendants offered for sale, sold, and distributed "knock-off versions" of Aquapaw's "Pet Bathing Tool" product. *Id.* at 2–3. According to Aquapaw, such actions infringe at least one claim of its patent, U.S. Patent No. 10,531,728,[1] in violation of 35 U.S.C. § 271. *Id.* The Complaint also alleges that Defendants "reside or operate in foreign jurisdictions, or (though not foreign) redistribute products from the same or similar sources in those foreign locations." *Id.* ¶ 17. Aquapaw then moved for an order authorizing alternative service under Federal Rule of Civil Procedure 4(f)(3). *See* ECF No. 11. The Court granted that motion in an order authorizing service

---

[1] The '728 Patent is for Aquapaw's "Pet Bathing Tool" device. The Pet Bathing Tool is a "hand attachable animal washing apparatus attachable to a hand of a user for singlehanded control of water emitted therefrom." ECF No. 2-3 at 11.

via e-mail and website publication. *See* ECF No. 17 ¶¶ 1–2. Aquapaw subsequently executed service according to that order. *See* ECF No. 28.

Aquapaw also filed a motion for a temporary restraining order, *see* ECF No. 4, which the Court granted, *see* ECF No. 15. The temporary restraining order: (1) restrained Defendants from continuing their allegedly infringing activities; (2) directed Third Party Service Providers to freeze Defendants' assets; (3) authorized Plaintiff to propound expedited written discovery on Defendants; and (4) set a hearing to determine whether the TRO should be converted into a preliminary injunction. *See id.* After a hearing, of which Defendants had notice but at which no Defendant appeared, the Court converted the TRO into a preliminary injunction. *See* ECF No. 35.

Aquapaw has sued numerous defendants in this action. Throughout the litigation, many parties have been voluntarily dismissed. The remaining Defendants—i.e., those not yet dismissed as of the date of this Memorandum Opinion and accompanying Order, and as listed in "Schedule A" attached to the Court's Final Default Judgment Order—subject to the instant Motion did not file answers or otherwise respond to the Complaint within the time required by Federal Rule of Civil Procedure 12. Therefore, Aquapaw requested, and the Clerk entered, default against those remaining Defendants pursuant to Rule 55(a). *See* ECF Nos. 39 & 40. Following entry of default, Aquapaw filed the instant Motion for Default Judgment, requesting:

> 1) the entry of a final judgment and permanent injunction by default in order to prevent Defendants from infringing Plaintiffs' intellectual property rights in the future; 2) award of $1,800,000.00 against each Defendant, plus post-judgment interest; 3) a post-judgment asset restraining order and 4) an order authorizing the release and transfer of Defendants' frozen assets to satisfy the damages awarded to Plaintiffs.

ECF No. 49 at 1. In response to the Court's order, ECF No. 55, Aquapaw filed supplemental briefing on whether joinder is proper here. *See* ECF No. 56.

**II.     Standard of Review**

Before entering a default judgment, a court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 U.S. Dist. LEXIS 147376, at *2 (D.N.J. Oct. 30, 2015). Once these conditions have been satisfied, the decision to grant default judgment rests primarily in the discretion of the district court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d. Cir. 1984). Three factors guide courts in the exercise of that discretion: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d. Cir. 2000). Courts must treat as true all factual allegations of the complaint, except those relating to the amount of damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir 1990).

**III.    Discussion**

    **A.     Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C §§ 1331 and 1338 because Aquapaw alleges violations of 35 U.S.C. § 271. And Defendants have sufficient minimum contacts with Pennsylvania such that the Court may exercise specific personal jurisdiction over them. *See D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102–03 (3d Cir. 2009) (finding that because Pennsylvania's long-arm statute permits jurisdiction based on constitutionally minimum contacts, traditional two-stage personal jurisdiction evaluation collapses into due process analysis only); *Hepp v. Facebook*, 14 F.4th 204, 207 (3d. Cir. 2021) (noting that minimum contacts inquiry requires assessment of whether (1) defendant purposefully avails itself of the forum state and (2)

defendant's contacts with the forum "give rise to—or relate to—plaintiff's claims") (citations omitted). Specifically, the Court finds that Defendants purposefully availed themselves of the forum state because they completed sales of their products to a Pennsylvania address. ECF No. 2 ¶ 11; ECF No. 13 ¶¶ 2–3. Furthermore, Defendants' contacts with Pennsylvania gave rise to (or relate to) Aquapaw's claim because Aquapaw claims that Defendants' sales of products into Pennsylvania violated 35 U.S.C. § 271. Accordingly, because the relationship between the Defendants, the forum, and the litigation is sufficient to satisfy the minimum contacts requirement of the Due Process Clause, *see D'Jamoos*, 566 F.3d at 103, the Court may exercise personal jurisdiction over Defendants.

### B.     Joinder

With limited exceptions not relevant here, joinder in patent cases is governed by 35 U.S.C. § 299. That section provides that accused infringers may be joined in one action only if:

> [A]ny right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

35 U.S.C. § 299(a)(1). Joinder is improper, however, where "accused infringers" are "joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C § 299(b). Finally, "[a] party that is an accused infringer may waive the limitations set forth in this section with respect to that party." 35 U.S.C § 299(c).

Here, the Defendants may have already waived the limitations of § 299 by failing to appear and contest joinder (or, for that matter, any other aspect of this action). Because they have all failed to appear and litigate, Defendants have not been prejudiced by being forced to litigate their

claims with unrelated parties. Accordingly, Defendants have each likely waived any challenge to joinder they may have been able to mount had they appeared and litigated this case.

Even if Defendants did not waive any objections to joinder under § 299 that they may have had, they are nevertheless properly joined here. In short, deciding whether a product is the "same" for purposes of joinder under § 299 entails applying a less exacting standard than simply looking to whether a defendant's product is literally identical to the product it allegedly copies. *See In re Apple Inc.*, 650 F. App'x 771, 774 (Fed. Cir. 2015) (noting that joinder under § 299(a) requires the finding of "a 'logical relationship' between the claims linking the underlying facts.") (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358–59 (Fed. Cir. 2012) (applying Rule 20 and finding, "[j]oinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent")).

Here, while some of Defendants' products are superficially different from each other's (e.g., different colors or different shapes of the rubber nubs), the products are the same in all respects relevant to the patent. *See* ECF Nos. 2-4 & 2-5. Furthermore, joinder here is not "based solely on allegations that [Defendants] have each infringed the patent or patents in suit." 35 U.S.C § 299(b). Rather, Defendants are co-conspirators in a scheme to profit by infringing on Aquapaw's patent. *See* ECF No. 2 ¶ 8; *see also MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 661 n.10 (S.D. Miss. 2013) (considering "concerted action" as a factor in determining propriety of joinder) (citing David O. Taylor, *Patent Misjoinder*, 88 N.Y.U. L. Rev. 652(2013)); *see also* Taylor, *Patent Misjoinder,* 88 N.Y.U. L. Rev. at 712 ("[C]oncerted action appears to be a proxy for similarity of products or processes . . . Indeed, the more concerted the action, the more likely that the products are indistinguishable - and therefore, the more likely that joinder is appropriate.").

Finally, joinder here is consistent with the overall policies behind joinder mechanisms in civil proceedings—i.e., fairness, convenience, and judicial economy. *See Horton Co. v. International Tel. & Tel. Corp.*, 85 F.R.D. 369, 371 (3d. Cir. 1980) ("The purpose of [Rule 20 joinder] is to promote trial convenience and expedite the final resolution of disputes."); *In re EMC Corp.*, 677 F.3d at 1355 ("Rule 20's two requirements . . . help ensure that the scope of the action remains consistent with fairness to the parties."). Meanwhile, severing parties now would result in unnecessary delay and prejudice to Aquapaw. Joinder of Defendants here is therefore appropriate.

### C. Service of Process

The Constitution requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rules 4(h)(2) and 4(f)(3) of the Federal Rules of Civil Procedure together provide that a party may serve an individual or a business entity at a place not within any judicial district of the United States by means not prohibited by international agreement.

Here, the Court authorized alternative service, finding that service by e-mail and website publication was reasonably calculated to apprise the interested parties of the pendency of this action and afford them an opportunity to present their objections. *See* ECF No. 17. Aquapaw effectuated service in accordance with that Order. *See* ECF No. 28. Finally, service by e-mail and website publication is not prohibited by international agreement. *See Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 2:13-cv-458, 2013 U.S. Dist. LEXIS 54299, *3–6 (W.D. Pa. Apr. 16, 2013) (Hornak, C.J.); *see also Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-cv-20590, 2015 U.S. Dist. LEXIS 122000, at *9–11 (S.D. Fla. Sept. 14, 2015); *FTC v. PCCare247 Inc.*, No.

12-cv-7189, 2013 U.S. Dist. LEXIS 31969, at *10 (S.D.N.Y. Mar. 7, 2013). Therefore, service was proper in this case.

### D. Statement of a Claim for Patent Infringement

To state a claim for patent infringement, a pleading must (1) allege ownership of the patent; (2) name each defendant; (3) cite the patent that is allegedly infringed; (4) state how the defendant allegedly infringes upon the patent; and (5) point to the sections of the patent law invoked. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013). Here, Aquapaw (1) alleges ownership of the patent, ECF No. 2 ¶ 2; (2) names each allegedly infringing Defendant, *id.* at 23–28; (3) cites the patent that is allegedly infringed, *id.* ¶ 7; (4) states how Defendants allegedly infringe, *id.* ¶ 36; and (5) points to the sections of the patent law invoked, *id.* ¶ 45. Aquapaw has therefore stated a claim for patent infringement.

### E. *Chamberlain* Factors

First, Aquapaw would be prejudiced if default judgment were denied because the Defendants have failed to appear. Denial of default judgment would therefore leave Aquapaw with no other means to vindicate its claims. *See Arias v. Wal-Mart Stores East, LP*, No. 19-cv-05227, 2021 U.S. Dist. LEXIS 173909, at *10–11 (E.D. Pa. Sept. 14, 2021). Second, because Defendants have not appeared in this case, the Court cannot know what defenses they may have. The Court may therefore presume there are none. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014). Third, "culpable conduct" is that which is done "willfully or in bad faith." *Slater v. Yum Yum's 123 ABC*, No. 2:20-cv-00382, 2021 U.S. Dist. LEXIS 101251, at *13 (E.D. Pa. May 28, 2021) (citing *Chamberlain*, 210 F.3d at 164). The Defendants' acceptance of the Complaint and failure to appear or respond constitutes willful and therefore culpable conduct. *See id.*

### F.     Requested Relief

#### 1.     Permanent Injunction and Post-Judgment Asset Restraining Order

A court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  In granting an injunction, a court should consider "(1) irreparable injury;  (2) inadequacy of legal remedies;  (3) the balance of hardships as between the plaintiff and defendant;  and (4) the public interest." *2109971 Ont. Inc. v. Matrix Hosp. Furniture Inc.*, No. 21-11412, 2022 U.S. Dist. LEXIS 8458, at *9 (D.N.J. Jan. 14, 2022) (citing *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006)).

First, Aquapaw's right to exclude Defendants from infringing its patent would be irreparably harmed in the absence of a permanent injunction. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent."). And Aquapaw's Complaint, taken as true, establishes that it is "suffering irreparable and indivisible injury." ECF No. 2 ¶ 11k.  Second, money damages alone are inadequate because Defendants' conduct violates Aquapaw's right to exclude others from infringing on its patent. *See Acumed LLC*, 551 F.3d at 1328 ("[I]nfringement may cause a patentee irreparable harm not remediable by a reasonable royalty.").  Third, the balance of hardships favors Aquapaw because Defendants have admitted by their default that they are not legally entitled to produce, sell, or distribute the products.  Meanwhile, Aquapaw is injured by unauthorized sales of products that infringe on its patent.  Fourth, protection of intellectual property rights serves the public interest. *See Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (Fed. Cir. 1984).  Aquapaw's request for a permanent injunction and post-judgment asset restraining order will therefore be granted.

### 2.     **Compensatory Damages**

A court may award damages adequate to compensate for patent infringement with interest and costs.  35 U.S.C. § 284.  One way of proving damages is the *Panduit* test.  *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. (2017).  Under that test, a patentee is entitled to lost profit damages if it establishes "(1) demand for the patented product;  (2) absence of acceptable non-infringing alternatives;  (3) manufacturing and marketing capability to exploit the demand;  and (4) the amount of the profit it would have made."  *Id.* at 1285.

Here, Defendants have admitted by their failure to respond to Aquapaw's requests for admissions (1) that there was demand for Aquapaw's products;  (2) that there was an absence of acceptable non-infringing substitutes;  (3) that Aquapaw had manufacturing and marketing capability to exploit the demand;  and (4) the amount of profit that Aquapaw would have made. ECF No. 51-2 ¶ 5.  The Court will therefore award Aquapaw, in accordance with its calculation, $20 in lost profit per unit, multiplied by the admitted 15,000 units each month for two months, totaling $600,000.00, plus post-judgment interest.

### 3.     **Treble Damages**

A district court may increase damages awarded in cases of patent infringement up to three times the amount found or assessed.  35 U.S.C. § 284.  But that discretion is limited:  courts may generally award enhanced damages only in egregious cases of willful misconduct.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016).  Even after a finding of willfulness, "the decision to enhance damages is a discretionary one that the district court should make based on the circumstances of the case."  *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) (affirming the jury's finding of willfulness but remanding to the district court to decide in its discretion whether damages should be trebled).

Here, Aquapaw suggests that enhanced damages are appropriate because of Defendants' "intentional infringement." ECF No. 52 at 9 ("When those lost profits are trebled for intentional infringement, also admitted by the Defendants, the total award is $1,800,000.00 in damages."). The Complaint, taken as true, establishes that "Defendants [were] actively participating in a conspiracy to distribute and sell Infringing Products." ECF No. 2 ¶ 8. And Defendants have also admitted that they knew about Aquapaw's patent before they began their infringing behavior, yet intentionally infringed anyway. ECF No. 51-2 ¶ 5. Therefore, in light of Defendants' willful violation of Aquapaw's patent, the Court will award Aquapaw treble damages.

### 4. Order Authorizing the Release and Transfer of Frozen Assets

Other courts in similar cases have held that transfer of defendants' frozen assets to satisfy judgment was warranted and within the court's authority. *See, e.g.*, *Golden Goose Deluxe Brand v. AAdct Official Store*, 19 Civ. 2521, 2020 U.S. Dist. LEXIS 104091, at *17 (S.D.N.Y. June 15, 2020). Aquapaw's request for an order authorizing the release and transfer of Defendants' frozen assets to satisfy the damages awarded will therefore be granted.

## IV. Conclusion

For the reasons set forth above, Aquapaw's Motion for Default Judgment will be GRANTED. An appropriate Order will follow.


DATED this 29th day of July, 2022.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

10

cc (via ECF email notification):

All Counsel of Record